UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARK D. HARTMAN,

                Petitioner,                Case No. 1:12-cv-1015

v.                                    Honorable Janet T. Neff

MARY BERGHUIS,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pleaded guilty in two separate criminal cases in Berrien County Circuit Court. In one case Petitioner pleaded no contest to unlawful imprisonment, Mich. Comp. Laws § 750.349(b), and in the other he pleaded no contest to threatening a witness, Mich. Comp. Laws § 750.122(7)(c). The same judge presided over both cases.[1] On February 27, 2009, the court issued a sentence in each case, resulting in consecutive prison terms of 5 to 15 years for the unlawful-imprisonment charge and 7 to 15 years for the threatening-a-witness charge. A judgment was entered in each case on March 3, 2009.

Petitioner, who is represented by counsel in this action, raises five grounds for relief, as follows:

_____

[1]The two cases are related in that the threatening-a-witness charge concerns conduct by Petitioner while he was in custody for the unlawful-imprisonment charge.

I.     WHETHER THE SCORING OF PRV 7 AND IMPOSING CUMULATIVE SENTENCES HEREIN VIOLATED DUE PROCESS, DOUBLE JEOPARDY, AND EQUAL PROTECTION.

II.     WHETHER, WITHOUT SCORING POINTS FOR PRV 7, FACTUAL FINDINGS BY THE TRIAL COURT TO INCREASE THE MAXIMUM SENTENCE FROM COUNTY JAIL TIME TO MDOC TIME VIOLATED THE SIXTH AMENDMENT AND THE DUE PROCESS CLAUSE UNDER THE *APPRENDI*, *BLAKELY*, *BOOKER*, AND *CUNNINGHAM* LINE OF CASES.

III.     WHETHER PETITIONER'S SIXTH AMENDMENT RIGHT TO RETAINED COUNSEL OF CHOICE WAS VIOLATED WHEN THE TRIAL COURT WOULD NOT ADJOURN SENTENCING TO ALLOW FOR SUBSTITUTION OF RETAINED COUNSEL.

IV.     WHETHER RESENTENCING SHOULD BE BEFORE A DIFFERENT JUDGE AS THE ORIGINAL JUDGE PREJUDGED COUNSEL'S PROPOSED PRESENTATION OF AN OBJECTIVE RISK ASSESSMENT AS HAVING NO VALUE. PREJUDGING THIS INFORMATION VIOLATED [PETITIONER'S] DUE PROCESS RIGHTS.

V.     WHETHER, DUE TO THE FACT THAT THERE HAS BEEN INDICATION THAT THE COURT MAY OVERRULE *HARRIS* AND PREVIOUSLY GRANTED CERTIORARI TO DETERMINE IF *BLAKELY* IS RETROACTIVE, [PETITIONER] HEREBY PRESERVES THE ISSUE THAT THE DUE PROCESS CLAUSE AND THE SIXTH AMENDMENT RIGHT TO A JURY TRIAL, UNDER THE *APPRENDI/BLAKELY* LINE OF CASES PREVENTED THE STATE TRIAL COURT FROM MAKING FINDINGS OF FACT UNDER A PREPONDERANCE OF EVIDENCE STANDARD TO SCORE THE GUIDELINES AND INCREASE [PETITIONER]'S MINIMUM SENTENCES HEREIN.

(*See* Br. in Support of Pet. for Habeas Corpus, docket #1, Page ID#27.)  Respondent has filed an answer to the petition (docket #7) stating that Petitioner's grounds are noncognizable state-law claims or otherwise are without merit.  Petitioner filed a reply (docket #30).  Upon review and applying the AEDPA standards, I find that Petitioner fails to raise a meritorious federal claim.  Accordingly, I recommend that the petition be denied.

**Procedural History**

### A.    Trial Court Proceedings

Petitioner originally was charged in Berrien County (Case No. 08-405374-FH) with assault with intent to murder, MICH. COMP. LAWS § 750.83, willful and malicious interference with telecommunication device, MICH. COMP. LAWS § 750.540, aggravated domestic assault, MICH. COMP. LAWS § 750.81a, and unlawful imprisonment, MICH. COMP. LAWS § 750.349(b).  The charges arose from an incident involving Petitioner's girlfriend, Kathy Hall. At the preliminary examination, Hall testified that she had met Petitioner in New York about a year and a half earlier and moved to Michigan with him on October 5, 2008.  (Preliminary Examination I (PE I) Tr. 5, docket #12.)  They drove from New York to Michigan and got a room at the Baymont Inn in Stevensville.  (PE I Tr. 6.) They were staying at the hotel while they looked for place to live.  (PE I Tr. 7.)  On the evening of October 15, 2008, the couple drove to a local restaurant for dinner.  They had drinks with dinner and then shared three pitchers of beer.  (PE I Tr. 10.)  Hall became upset by Petitioner's contact with another woman, who told Hall that Petitioner was "rubbing his [sic] off on [her]."  (PE I Tr. 8.)  Hall went out to the car to get her things and intended to leave Petitioner.  While trying to open the back of the car, she cut her fingers on the license plate.  (PE I Tr. 9.)  A man from the restaurant offered to take Hall to the hospital to get stitches, but Hall asked him to take her back to the hotel because she wanted to collect her belongings and leave before Petitioner returned.  (PE I Tr. 9, 11.) Petitioner, however, was already at the hotel when Hall arrived. (PE I Tr. 9.)

Hall testified that she entered the hotel room and began to gather her things so she could move to another room or another hotel.  (PE I Tr. 13-14.)  Petitioner told Hall that she was not leaving him and they began to argue.  At some point, Petitioner took her down to the floor and

started choking her with one hand and covering her nose and mouth with the other hand.  (PE I Tr. 14.)  Hall tried to get to the phone to call the police, but Petitioner ripped the phone cord out of the wall saying, "Now you're not going to use the phone.  You're not going to be running your mouth. You're not going to be all loud.  You're being too loud.  I'm going to shut you up."  (PE I Tr. 15.) Hall also tried several times to get to the door, but Petitioner dragged her back and said, "You have to die.  I have to kill you.  You have to die because you're in my way.  You're in my way.  You're better off to me dead than you are alive."  (PE I Tr. 16.)  Hall testified that she was trying to defend herself and was doing whatever she could to breathe because she was starting to lose consciousness. Petitioner repeatedly struck Hall in the side of the head, causing blood to come out of her ears.  (PE I Tr. 16, 18-19.)  She was covered with blood.  (PE I Tr. 16.)  Petitioner filled the bathtub with water and told Hall that he was going to "make it look like you did this to yourself."  (PE I Tr. 17.)  Hall begged Petitioner not to kill her.  She played dead, and when Petitioner went into the bathroom, she got out the door long enough to scream for help.  (*Id.*)  Petitioner dragged Hall back into the room by her legs and closed the door.  He continued to press down hard on her nose and mouth so that she could not breath.  (PE I Tr. 18.)  Police eventually came to the room and took Petitioner into custody. Hall was taken by ambulance to the hospital for treatment. (PE I Tr. 20-21.)

As a result of Petitioner's assault, Hall suffered numerous cuts and bruises on her face and body, a big bump on the side of her head, a black eye, broken ribs, a ruptured spleen and had blood coming out of her ears.  (PE I Tr. 21.)  Police Officer Kevin Boyle testified that Hall was unconscious when he entered the room and took Petitioner into custody.  (PE I Tr. 47.)  Hall regained consciousness after paramedics arrived and began to administer medical care.  (PE I Tr. 48.)

- 4 -

Petitioner later was charged in a separate case (No. 08-406354-FC) involving the same victim with solicitation to commit murder, MICH. COMP. LAWS § 750.157b(2); witness intimidation (threatened to kill or injure), MICH. COMP. LAWS § 750.122(7)(c); intimidating a witness, MICH. COMP. LAWS § 750.122(7)(b); and retaliation against a witness, MICH. COMP. LAWS § 750.122(8). Petitioner was accused of offering money to Dennis Holbrook, a prisoner at the Berrien County Jail, to kill Hall or otherwise prevent her from testifying against Petitioner in Case No. 08-405374-FH. At the preliminary examination, Dennis Holbrook testified that he met Petitioner in the Berrien County Jail in mid-November 2008. (Preliminary Examination II (PE II) Tr. 10, docket #19.) The two men were alone in the same room together on lockdown for five days. (PE II Tr. 10.) During that time, Petitioner told Holbrook about the charges against him and that "[he] was looking for a way to get rid of this witness against him in his case." (PE II Tr. 13.) The witness was Kathy Hall. (PE II Tr. 18.) Since Holbrook was from the area and knew people, Petitioner asked him if he "[c]ould [] get rid of someone for him; could [he] make someone disappear?" (PE II Tr. 14.) Holbrook responded that anything was possible, but it was not going to be cheap. (*Id*.) They discussed the details of what Holbrook would be willing to do and how much it would cost Petitioner. (PE II Tr. 15.) According to Holbrook, Petitioner stated that -

> He was tired of her. He was tired of the way she treated him. This is -- this was like [the] third or fourth time she had gotten him into trouble. He was in jeopardy of losing everything again, and that, he was - he was just tired of dealing with it, he didn't want her around. He wanted to make sure that she didn't come to court and he didn't care how that happened.

(PE II Tr. 15.) Petitioner agreed to pay Holbrook $2500 to kill Hall. (PE II Tr. 18-19.) They discussed feeding her body to hogs at a local farm so that she would never be found. (PE II Tr. 19.)

- 5 -

Petitioner also agreed to assist Holbrook if he needed to leave the state. Petitioner told him that his father owned a used car lot and a gun shop. (PE II Tr. 17.)

While Holbrook and Petitioner were still on lockdown together, Holbrook wrote to the prosecutor and Berrien County Deputy Eason regarding his conversations with Petitioner. (PE II Tr. 22.) Holbrook subsequently was placed in a cell with Petitioner while wearing a recording device. (PE II Tr. 22, 26-27.) During their recorded conversation, Petitioner did not explicitly tell Holbrook to kill Hall, but he made it clear that he was paying Holbrook to locate Hall and prevent her from testifying at Petitioner's trial. (PE II Tr. 27, 29-30.) Petitioner gave Holbrook a list of addresses in New York where Hall might be found, which Holbrook turned over to Deputy Eason. (PE II Tr. 35.) Alternatively, Petitioner and Holbrook discussed in detail how Holbrook could locate Hall after she arrived in Berrien County for the trial. (PE II Tr. 38.) From the context of the conversation, it was clear to Holbrook that Petitioner wanted him to kill Hall. (PE II Tr. 39.)

On January 27, 2009, Petitioner pleaded nolo contendere in the Berrien County Circuit Court to unlawful imprisonment to facilitate the commission of assault with intent to murder in Case No. 08-405374-FH, and witness intimidation involving a threat to kill or injure in Case No. No. 08-406354-FC. (Plea Tr. 3-6, docket #15.) Each offense was punishable by a maximum sentence of 15 years. (*Id*.) In exchange for Petitioner's plea, the prosecutor dismissed the remaining charges in both cases, as well as a charge of assault and battery in a third case. (Plea Tr. 8-9.) The plea agreement also included a sentence agreement that if Petitioner received consecutive sentences, the sum of the two minimum sentences would be 12 years. (Plea Tr. 9.) If the court decided not to follow the sentence agreement, Petitioner would be permitted to withdraw his plea and proceed to

trial.  (Plea Tr. 11-12.)  The Preliminary Examination testimony from each case served as the factual

basis for the plea.  (Plea Tr. 12-20.)

The sentencing hearing was held on February 27, 2009.  Petitioner's counsel, Jack

Banyon, moved for a continuance of the sentencing so that another attorney, Timothy Holloway,

could assume Petitioner's representation.  (Sentencing Transcript (S. Tr.) 3-4, docket #16, 22.)  The

trial court denied the motion and sentenced Petitioner to five to fifteen years for the unlawful

imprisonment conviction (Case No. 08-405374-FH) and a consecutive sentence of seven to fifteen

years for the witness intimidation conviction (Case No. 08-406354-FC).  (S. Tr. 6-7, 57-58.)

### B.    Direct Appeal

Petitioner filed motions for resentencing and disqualification in the trial court in both

criminal cases on August 24, 2009.  In his motions, Petitioner claimed that the trial court had erred

in scoring various Prior Record Variables (PRV's) and Offense Variables (OV's).  A hearing was

held on October 22, 2009, and the trial court issued opinions and orders denying the motions on

January 12, 2010.  (Op. & Order Denying Def.'s Mot. for Resentencing in Case No. 2008-405374-

FY, docket #25; Op. & Order Denying Def.'s Motion for Resentencing in Case No. 2008-406354-

FY, docket #27).

While these cases were treated separately on appeal, they share the same dates for all

events.[2]  In both cases, Petitioner filed a delayed application for leave to appeal with the Michigan

Court of Appeals on February 25, 2010, raising fifteen claims of error, including the five claims now

---

[2]The threatening a witness case was given Michigan Court of Appeals docket number 296704 and Michigan
Supreme Court docket number 141227, while the unlawful imprisonment case was given docket numbers 296703 and
141225, respectively.

presented in his habeas petition.  (*See* Def.-Appellant's Br. on Appeal, docket ## 24, 26.)  The court

of appeals denied both applications on May 5, 2010, for lack of merit in the grounds presented.

*People v. Hartman*, Docket No. 296703 (Mich. Ct. App. May 5, 2010); *People v. Hartman*, Docket

No. 296704 (Mich. Ct. App. May 5, 2010).  On June 15, 2010, Petitioner filed timely applications

for leave to appeal in the Michigan Supreme Court.  In each case, he raised the same fifteen claims

raised before and rejected by the Michigan Court of Appeals.  The Michigan Supreme Court denied

the applications on September 27, 2010, because the court was not persuaded that the questions

presented should be reviewed.  *People v. Hartman*, 788 N.W.2d 440 (Mich. 2010); *People v.

Hartman*, 788 N.W.2d 441 (Mich. 2010).  The Michigan Supreme Court subsequently denied

Petitioner's motions for reconsideration in both cases on December 20, 2010.  *People v. Hartman*,

791 N.W.2d 441 (Mich. 2010).

Petitioner filed petitions for writ of certiorari in both cases on May 13, 2011.  The

Supreme Court denied the petitions on October 3, 2011.  *Hartman v. Michigan*, 132 S. Ct. 104

(2011).

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB.

L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect

to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for

writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot

be granted with respect to any claim that was adjudicated on the merits in state court unless the

adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  The Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–406).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law

is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 169, 1702 (2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Richter*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue de novo where state courts had not reached the question).[3]

---

[3]Throughout the 100-page supporting brief, Petitioner's counsel makes numerous convoluted arguments that the orders of the state courts are not entitled to AEDPA deference, and, thus, Petitioner is entitled to *de novo* review of his claims. Because Petitioner is not entitled to habeas corpus relief, regardless of whether deference is given to the orders of the state courts, this Court will apply *de novo* review for purposes of this Report and Recommendation.

## Discussion

## I.        Ground I: Scoring of PRV 7 and imposition of consecutive sentences

In Ground I, Petitioner contends that the trial court violated his constitutional rights by scoring 10 points for both offenses under Prior Record Variable 7 (PRV 7)[4], which concerns subsequent and concurrent felony convictions, *and* imposing consecutive sentences under MICH. COMP. LAWS § 768.7b(2), which allows for discretionary consecutive sentencing under circumstances where a person who has been charged with a felony commits a subsequent felony offense while the charges remain pending on the initial charge.[5]

---

[4]The scoring of PRV 7 is governed by MICH. COMP. LAWS § 777.57, which provides:

(1)    Prior record variable 7 is subsequent or concurrent felony convictions. Score prior record variable 7 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

    (a)    The offender has 2 or more subsequent or concurrent convictions -  20 points

    (b)    The offender has 1 subsequent or concurrent conviction - 10 points

    (c)    The offender has no subsequent or concurrent convictions - 0 points

(2)    All of the following apply to scoring record variable 7:

    (a)    Score the appropriate point value if the offender was convicted of multiple felony counts or was convicted of a felony after the sentencing offense was committed.

    (b)    Do not score a felony firearm conviction in this variable.

    (c)    Do not score a concurrent felony conviction if a mandatory consecutive sentence or a consecutive sentence imposed under section 7401(3) of the public health code, 1978 PA 368, MCL 333.7401, will result from that conviction.

[5]MICH. COMP. LAWS § 768.7b(2) provides in pertinent part:

Beginning January 1, 1992, if a person who has been charged with a felony, pending the disposition of the charge, commits a subsequent offense that is a felony, upon conviction of the subsequent offense . . . the following shall apply:

    (a)    Unless the subsequent offense is a major controlled substance offense, the sentences imposed for the prior charged offense and the subsequent offense may run consecutively.

- 11 -

A.   Due Process

Claims concerning the improper scoring of sentencing guidelines are state-law claims that typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).  There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).  Moreover, the issue of whether Petitioner was properly sentenced to consecutive terms of imprisonment under Michigan law also is not cognizable for purposes of habeas corpus review.  *See Harrison v. Parke*, No. 89-6495, 1990 WL 170428, at *2 (6th Cir. Nov. 6, 1990) ("Because it is a matter of substantive state law whether [petitioner's] sentence should run concurrently or consecutively, we find the district court did not err in ruling that [petitioner's] challenge to his consecutive sentences was not cognizable in a federal habeas corpus proceeding.")

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'"  *Bowling*

*v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court

"will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is

within state statutory limits unless the sentence is so disproportionate to the crime as to be

completely arbitrary and shocking.") (citation omitted).  Petitioner's sentence clearly is not so

disproportionate to the crime as to be arbitrary or shocking.  *Doyle*, 347 F. Supp. 2d at 485.

Furthermore, Petitioner received the precise sentence that he bargained for.  The plea included a

sentence agreement that if Petitioner received consecutive sentences, the sum of the two minimum

sentences would be 12 years.  In accordance with the agreement, the trial court imposed consecutive

minimum sentences of 5 years for the unlawful imprisonment charge and 7 years for the threatening-

a-witness charge.  Because Petitioner received the agreed upon sentence, any alleged inaccuracy in

the scoring of the guidelines fails to implicate the Due Process Clause.

B      Double Jeopardy

        The Fifth Amendment ensures that no one may "be subject for the same offence to

be twice put in jeopardy of life or limb." U.S. CONST. amend. V.  The Double Jeopardy Clause

protects criminal defendants from prosecution following conviction or acquittal for the same offense,

and also prohibits infliction of "multiple punishments for the same offense imposed in a single

proceeding." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (internal quotation marks omitted).  "With

respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more

than prevent the sentencing court from prescribing greater punishment than the legislature intended."

*Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014).

In fact, "the Court has never held or intimated that the constitutional bar against double jeopardy

circumscribes the legislative prerogative to define crimes and prescribe punishment in the context

- 13 -

of a single prosecution." *White v. Howes*, 586 F.3d 1025, 1032 (6th Cir. 2009).  "Even if the crimes are the same under *Blockburger* [*v. United States*, 284 U.S. 299 (1932) ], if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end."  *Ohio v. Johnson*, 467 U.S. 493, 499 n. 8 (1984); *see also White*, 586 F.3d at 1032 (denying habeas even though the panel "agree[d] . . . that the two statutes at issue . . . punish the same offense under *Blockburger* ").

Petitioner argues that his sentence violated the Double Jeopardy Clause because there is no clear legislative intent to allow the scoring of points under MICH. COMP. LAWS § 777.57 *and* to impose a consecutive sentence under MICH. COMP. LAWS § 768.7b(2).  Petitioner's claim is without merit.  With regard to the scoring of sentencing variables, the Supreme Court "[h]istorically . . . [has] found double jeopardy protections inapplicable to sentencing proceedings, . . . because the determinations at issue do not place a defendant in jeopardy for an 'offense' . . . ."  *Monge v. California*, 524 U.S. 721, 728 (1998) (addressing multiple prosecution component of the Double Jeopardy Clause) (citing *United States v. Watts*, 519 U.S. 148, 154 (1997) (addressing the multiple punishment component)). Petitioner's claim, therefore, fails to raise a proper ground for habeas corpus relief.  *See, e.g., Beacham v. Smith*, No. 1:08-cv-252, 2008 WL 4562260, at *5-6 (W.D. Mich. Oct. 8, 2008) (rejecting claim that  the assessment of points under a particular sentencing variable would amount to the imposition of double jeopardy); *Jones v. Trombley*, No. 2:07-cv-10139, 2007 WL 405835, at *3 (E.D. Mich. Jan. 31, 2007) (finding noncognizable a habeas claim that the application of state sentencing guidelines violated the Double Jeopardy Clause); *Fisher v. Booker*, No. 03-10029-BC, 2006 WL 2420229, at *8 (E.D. Mich. Aug. 22, 2006) (citing *People v. Gibson*, 557 N.W.2d 141, 143 (Mich. Ct. App. 1996) (holding that the score a defendant receives on an offense variable is not a form of punishment under the Double Jeopardy Clause)).

Likewise, imposing consecutive sentences for separate offenses does not violate double jeopardy because the criminal defendant is not being sentenced twice for the same offense. *See U.S. v. Reditt*, 87 F. App'x 440, 447 (6th Cir. 2003); *Crenshaw v. Tate*, No. 90-3791, 1991 WL 93169, at *1 (6th Cir. June 4, 1991). Moreover, contrary to Petitioner's assertion, the Michigan legislature clearly enacted MICH. COMP. LAWS § 768.7b(2) with the intent to deter persons accused of one crime from committing others by removing the security of concurrent sentences. *See People v. Henry,* 309 N.W.2d 922, 924 (Mich. Ct. App. 1981). The statute's purpose has been further explained as follows:

> If consecutive sentences were not allowed, a defendant in a pending action would have the security of knowing that the sentence for a second felony committed will run concurrently with the sentence imposed for the first felony. The sentence for the second felony would be minimized. Thus, the Legislature passed M.C.L.A. § 768.7b; M.S.A. § 28.1030(2) to deter charged persons from committing a second felony by removing the security that the sentence must run concurrently with the first.

*People v. Mayes*, 621, 261 N.W.2d 22, 24 (Mich. Ct. App. 1977). Petitioner does not dispute that he committed the threatening-a-witness offense in Case No. 08-406354-FC while the felony charges for unlawful imprisonment were pending against him in Case No. 08-405374-FH. Consequently, the trial court imposition of consecutive sentences under MICH. COMP. LAWS § 768.7b(2) did not violate Petitioner's double jeopardy rights.

## C.   Equal Protection

Petitioner further argues that scoring 10 points for PRV 7 and imposing consecutive sentences under MICH. COMP. LAWS § 768.7b(2) violated his equal protection rights. Specifically, Petitioner contends that there's no rational basis for allowing the scoring of points under PRV 7 when a judge imposes discretionary consecutive sentences when the same judge would be prohibited

- 15 -

under MICH. COMP. LAWS § 777.57(c) from scoring points under PRV 7 when imposing mandatory consecutive sentences.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Because neither a fundamental right nor a suspect class is at issue in this case, Petitioner's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). In other words, a classification may be invalidated only if no set of facts can be reasonably conceived to justify it. *See Clement v. Fashing*, 457 U.S. 957, 963 (1982).

As an initial matter, "[a] State has wide latitude in fixing the punishment for state crimes." *Williams v. Illinois*, 399 U.S. 235, 241 (1970). Statutes that authorize varying punishments for the same criminal act generally do not violate equal protection rights. *See Williams*, 399 U.S. at 243 (no requirement that two persons convicted of the same offense receive identical sentences); *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (same). Moreover, the State of Michigan unquestionably has a strong interest in providing trial courts with the discretion to impose consecutive sentences for felony offenses. Because each offense involves a unique set of facts and circumstances, the trial court is in the best position to determine the appropriate sentence. Likewise,

- 16 -

as discussed above, the State has an interest in deterring a person who has been charged with a felony from committing additional felony offenses while the charges on the initial felony offense remain pending.  Consequently, it was entirely reasonable for the trial court to score points under PRV 7 and impose discretionary consecutive sentences.

## II.    Grounds II and V:  *Apprendi/Blakely*

In his second ground for habeas relief Petitioner claims that, if PRV 7 had been properly scored at zero points, factual findings by the trial court to increase the "maximum"[6] sentence from county jail time to MDOC time violated the Sixth Amendment and the Due Process Clause under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Petitioner's argument relies upon two assumptions.  First, it assumes that the trial court improperly scored 10 points for PRV 7 on both offenses.  Second, Petitioner assumes that, if PRV 7 had been properly scored at zero points, his minimum sentence would have fallen within Michigan's "intermediate sanction cell."  When the upper limit of the minimum sentence is under 18 months, the judge must impose an "intermediate sanction," which may include imprisonment in the county jail for up to a year, unless the court identifies a "substantial and compelling reason" for a harsher penalty.  *See* MICH. COMP. LAWS § 769.34(4)(a).[7]  Respondent contends that, even if PRV 7 was scored at zero, Petitioner's minimum

---

[6]In Michigan, the minimum sentence is defined by a range.  *People v. McCuller*, 739 N.W.2d 563, 570 (Mich. 2007) (citing Mich. Comp. Laws § 769.34(2)). That range is defined by a set of mandatory sentencing guidelines and is determined by considering the offense variables (OVs), prior record variables (PRVs), and the offense class of the defendant.  *See id.* (citing Mich. Comp. Laws § 777.21(1)).  The minimum sentence range is found by totaling the OVs and PRVs and locating the intersection of the appropriate numbers on a grid-chart.  Consequently, the "maximum" sentence to which Petitioner is referring is the top end of the minimum sentence range.

[7]In *Kittka v. Franks*, 539 F. App'x 668, 670 (6th Cir. 2013), the Sixth Circuit explained the three types of sentencing cells created under the Michigan sentencing guidelines as follows:

There are three types of "cells" in the grid of Offense Variables (OVs) and PRVs.  If the lower and upper limits of the minimum range are both more than 12 months, the judge must sentence the defendant to a state prison term, absent certain exceptions.  This is called a "prison cell."  If the upper

- 17 -

sentence would not have fallen within the intermediate sanction cell. The Court concluded above that the scoring of PRV 7 did not violate Petitioner's constitutional rights. Because the first assumption fails, the Court need not resolve whether Petitioner's minimum sentence would have fallen within the intermediate sanction cell without the scores for PRV 7.

Furthermore, even if both assumptions were true, Petitioner cannot establish an *Apprendi* violation. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely v. Washington*, 542 U.S. 296 (2004), the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi*, 530 U.S. at 490).

---

limit of the minimum sentence exceeds 18 months and the lower limit is under 12 months, the judge may either sentence the defendant to a state prison term or to a lesser "intermediate sanction." This is called a "straddle cell." Mich. Comp. Laws § 769.34(4)(c). Finally, if the upper limit of the minimum sentence is under 18 months, the judge must impose an "intermediate sanction" a punishment that may include imprisonment in the county jail for up to a year. Mich. Comp. Laws § 769.34(4). If the judge offers a "substantial and compelling reason" in writing for doing so, he may impose a stricter sentence. *Id.* This third category is called an "intermediate sanction cell."

Unlike the determinate sentencing scheme at issue in *Blakely*, Michigan law provides for an indeterminate sentencing scheme. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan*, 160–61, 715 N.W.2d 778, 789–90 (Mich. 2006); *People v. Claypool*, 684 N.W.2d 278, 286 n. 14 (Mich. 2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan*, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock*, 666 N.W.2d 231, 236 n. 7 (Mich. 2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool*, 684 N.W.2d at 286 n. 14. The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Montes v. Trombley*, 599 F.3d 490, 496-98; *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009).

In *Harris v. United States*, 536 U.S. 545, 568 (2002), the Supreme Court declined to extend the *Apprendi* line of cases to mandatory minimum sentences, holding that increases in a minimum sentence based on judicial fact-finding do not violate the Sixth Amendment because a minimum sentence does not alter the prescribed statutory maximum. However, after the briefs were filed in this case, the Supreme Court overruled *Harris*, and extended *Apprendi* to facts that increase a mandatory minimum sentence. *See Alleyne v. United States*, 133 S. Ct. 2151 (2013). Nevertheless, a writ of habeas corpus upsetting a state court conviction may issue only if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d). But the law that state courts must follow is clearly established Supreme Court law as it existed "at the time of the state-court adjudication on the merits." *Greene v. Fisher*, 132 S.Ct. 38, 43 (2011); *see also Miller v. Stovall*, 742 F.3d 642, 644-45 (6th Cir. 2014). When Petitioner's case was decided in the state courts, *Alleyne* had not been decided and *Harris* was still good law. Consequently, this Court's review is limited to the Supreme Court's pre- *Alleyne* decisions and does not consider *Alleyne*'s impact on Michigan's indeterminate sentencing scheme. *Greene*, 132 S. Ct. at 44; *Kittka v. Franks*, 539 F. App'x 668, 672-73 (6th Cir. 2013); *Williams v. Smith*, No. 11–15163, 2014 WL 632437, at *7 (E.D. Mich. Feb. 18, 2014).[8] Furthermore, the Sixth Circuit has held that *Alleyne* is not retroactively applicable to cases on collateral review. *See In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014).

In this case, Petitioner pleaded no contest to one count of unlawful imprisonment, Mich. Comp. Laws § 750.349(b), and one count of threatening a witness, Mich. Comp. Laws § 750.122(7)(c). Under Michigan law, the maximum penalty for unlawful imprisonment is 15 years' imprisonment and a fine of $20,000, Mich. Comp. Laws § 750.349(b)(2), and the maximum penalty for threatening a witness is 15 years' imprisonment and a fine of $25,000, Mich. Comp. Laws § 750.122(7)(c). Accordingly, the trial court had the authority to sentence Petitioner to fifteen years' imprisonment for each offense based solely on Petitioner's guilty plea. *Montes*, 599 F.3d at 497 (comparing *Blakely*, 542 U.S. at 305 (concluding that a state's sentencing laws violate the Sixth Amendment where "the judge's authority to impose an enhanced sentence depends on [a] finding [of fact]," and "the jury's verdict alone does not authorize the sentence," but "[t]he judge acquires

---

[8]Even if the Court could consider *Alleyne*, Petitioner would not be entitled to habeas relief. *Alleyne* concerned statutory mandatory minimum sentences, as opposed to facts used to determine the minimum sentence of an indeterminate sentencing scheme such as Michigan's. Where, as here, a defendant does not face a statutory minimum sentence, *Alleyne* is inapplicable. *United States v. Smith*, 749 F.3d 465, 487 (6th Cir. 2014).

that authority only upon finding some additional fact")).   "Accordingly, [Petitioner] does not have 'a legal right to a lesser sentence.'"   *Montes*, 599 F.3d at 497 (quoting *Blakely*, 542 U.S. at 309).

In Ground V, Petitioner makes a related argument that because there is some indication that the Supreme Court may overrule *Harris* and previously granted certiorari to determine if *Blakely* applies retroactively, he should be permitted to preserve his claim that *Apprendi* applies to prevent a state trial court from making findings of fact that would increase a defendants minimum sentence.   As discussed above, the Supreme Court overruled *Harris* in *Alleyne*, but that decision does not constitute clearly established Supreme Court precedent for purposes of this case, nor would it apply to Petitioner's sentence under Michigan's indeterminate sentencing scheme.   The Sixth Circuit also has held that *Alleyne* is not retroactively applicable to cases on collateral review.   *In re Mazzio*, 756 F.3d at 491.   The Court further notes that Petitioner has provided no legal basis for "preserving" a claim for habeas corpus review.   The Court may not grant habeas corpus relief unless and until a petitioner can establish a violation of clearly established Supreme Court precedent.   28 U.S.C. § 2254(d).

### III.   Grounds III and IV: Sixth Amendment right to retained counsel of choice

In his third ground for habeas corpus relief, Petitioner claims that the trial court violated his Sixth Amendment right to retained counsel of his choice when the trial court denied Petitioner's motion to adjourn the sentencing hearing to allow for substitution of counsel.

At the opening of the sentencing hearing on February 27, 2009,  Petitioner's counsel, Jack Banyon, moved to adjourn sentencing so that another attorney, Timothy Holloway, could assume Petitioner's representation.   (S. Tr. 3-4, dockets ##16, 22.)   Mr. Banyon explained that Mr. Holloway could not represent Petitioner at the hearing that day because he did not have adequate

time to prepare.  (S. Tr. 4.)  Mr. Holloway also wanted the adjournment so that  Petitioner could be

evaluated for his bipolar disorder.   Mr. Banyon presented the court with two letters from Mr.

Holloway requesting the adjournment.  In the letter addressed to the prosecutor dated February 26,

2009, Mr. Holloway explained:

> With regard to the potential mitigating evidence that may give the judge a
> fuller understanding of Mr. Hartman's background and circumstances, I am seeking
> to have an objective risk assessment done on Mr. Hartman.  In this regard, I have
> most recently contacted Dr. David Mossman of the University of Cincinnati law
> school. His faculty page [from] the school's web site follows this letter. I can also
> email his CV. Note that I also had this type of assessment done for a person
> prosecuted in federal court back in 2004 or so. I believe the assessment in that case
> was very helpful in giving the federal court a complete understanding of the
> circumstances in that case.
>
> With regard to Mr. Hartman, I believe the assessment may be most helpful
> to the court as, prior to all of the incidents leading to the charges herein, he was
> diagnosed as bi-polar. I hope to present an assessment related to Mr. Hartman's
> propensity or lack of propensity for violence when he is properly medicated.
> Although I am not a medical profession[al], I believe there may be a serious issue in
> this regard in relation to the events that led to the charges herein. Please note that a
> defendant's medical therapy is a proper issue for the trial court to consider at
> sentencing. E.g., *People v. Babcock* (*After Remand*), 253 Mich. App. 679, 681 (2003)
> ("there are factors relied on by the trial court that were objective and verifiable.
> Those factors included defendants compliance with his probation requirements,
> including sex offender therapy"); see also, *People v. Cleveland*, No. 258199, 2006
> WL 707733 (Mich. Ct. App. Mar. 21. 2006) (downward departure based on an
> incomplete defense of duress which is objective, verifiable, substantial and
> compelling factor).
>
> In order to obtain an assessment, a proper professional must be retained who
> is able to work in Michigan. Dr. Mossman has noted that he must first receive
> clearance from Michigan authorities prior to working here. He is not licensed in
> Michigan. Also, contacts with him are in the initial stages. Moreover, the evaluation
> may not be performed overnight. It will take some time before in (sic) can be
> completed. I include this information in order to be fully candid as to where this
> matter would stand, in terms of time, if the judge grants an adjournment.
>
> Finally, please be in contact with me regarding the possibility of a conference
> call with the judge regarding an adjournment of tomorrow's sentencing. Also, please

note that I was first contacted on this matter last week. There has been no lack of diligence on my part with regard to this case.

(Holloway Letter, docket #1-2, Page ID# 110-11.)  In making his motion, Mr. Banyon also stated that Petitioner wanted Mr. Holloway for his attorney.  (S. Tr. 4.)

In denying counsel's request for a continuance to allow for a substitution of retained counsel, the trial court stated:

> Well, this really is an eleventh hour request, and the plea was taken January 27th.  I have -- I have -- as I've indicated in chambers, I had numerous comments about Mr. Hartman's bipolar disorder and from one whose [sic] a -- I think a brother who's a doctor.  I'm not sure if he's a medical doctor or what, but he wrote me I don't know how many pages but it was something just short of *War and Peace* that I sifted through and read all of what he had to say about a long history of Mr. Hartman.  I don't know that some doctor who's never even met Mr. Hartman would have a better opinion about Mr. Hartman than his own brother who's dealt with a lot of his issues over the years, which he gave those to the Court.  Plus there were other uncles and aunts.  I don't know, I read all of the letters very late yesterday, and even today when I received another batch of information I read those this morning when I received them.  And I think -- I'm not here to dispute whether Mr. Hartman has a bipolar disorder.  I mean I think, Mr. Banyon, you've been aware of all of those things.  And I'm not -- I guess the bottom line is I'm not willing to adjourn the sentencing.  I think we all have sufficient knowledge, particularly from what the facts of the case are, and of Mr. Hartman's condition and also the facts of the case that may contravene some of those theories here.  But at any rate, the request for an adjournment is denied.  I just see that as we're just kind of postponing the inevitable here.

(S. Tr. 6-7.)

Petitioner raised the issue again in his motion for resentencing.  At the hearing on the motion, the trial court reiterated that the request for a continuance was made on the day scheduled for sentencing.  (10/22/2009 Resentencing Hearing (RH) Tr. 11, docket #17.)  The Court further noted that Mr. Hollaway had not filed an appearance, and, in fact, did not file an appearance until four months after Petitioner was sentenced and had been appointed appellate counsel.  (RH Tr. 13.)[9]

---

[9]According to the trial court, appointed appellate counsel filed motion to withdraw because, after a full review of Petitoner's case, he did not find an appealable issues.  (RH Tr. 13.)

Moreover, Mr. Banyon had represented Petitioner since the onset of the criminal proceedings and was prepared to proceed with sentencing. (RH Tr. 11.) The trial court also discussed that the proposed psychological assessment was not required for purposes of sentencing and that nothing in PSIR suggested that a psychological evaluation would be helpful in determining Petitioner's sentence. (RH Tr. 11, 12-13.) Nevertheless, the court had read the letter from Petitioner's brother, Steven Harman, which provided a detailed history of Petitioner's history of bipolar disorder. (RH Tr. 12.) The trial court further observed that to make such a motion on the date of sentencing appeared "to be nothing more than a delay tactic . . . ." (RH Tr. 13.) Consequently, the trial court concluded that it had properly denied Petitioner's motion for substitution of counsel. (RH Tr. 17.)

In his application for habeas corpus relief, Petitioner contends that an objective risk assessment regarding his propensity for violence would have provided useful information to the court for purposes of sentencing, including whether to impose concurrent or consecutive sentences. Petitioner further argues that the trial court prejudged the proposed risk assessment in an improper manner. He also claims that the trial court erroneously believed that Steven Hartman was a medical doctor, and, thus, there was no need for another medical opinion regarding Petitioner's bipolar disorder. In addition, Petitioner contends that he was not medicated while he was in jail and had the alleged discussions with Dennis Holbrook, thus raising the question of whether he was in his "right mind" during those conversations.

"In all criminal prosecutions," the Sixth Amendment says, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. That includes the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds. *United*

*States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006) (quotation omitted).  Deprivation of the right

is complete when a defendant is erroneously denied counsel of choice; he need not show prejudice

or demonstrate that the counsel he received was ineffective.  *Id.* at 148.  However, "the right to

counsel of choice 'is circumscribed in several important respects.'"  *Id.* at 144 (quoting *Wheat v.*

*United States*, 486 U.S. 153, 159 (1988)).  One of those respects is that trial courts retain "wide

latitude in balancing the right to counsel of choice against the needs of fairness, and against the

demands of its calendar." *Id.* at 152 (citation omitted).  Nevertheless, "an unreasoning and arbitrary

'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to

assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (quoting *Ungar v. Sarafite*, 376

U.S. 575, 589 (1964)).

      Whether a continuance for substitution of counsel is appropriate in a particular case

depends on the facts and circumstances of that case, *Ungar*, 376 U.S. at 589; *Morris*, 461 U.S. at

11–12, with the trial judge considering the length of delay, previous continuances, inconvenience

to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the

accused, the availability of other competent counsel, the complexity of the case, and whether denying

the continuance will lead to identifiable prejudice.  *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir.

1985).

      Under the circumstances present in this case, the trial court's denial of a continuance

of the sentencing hearing for substitution of counsel was entirely reasonable.  While the sentencing

hearing had been scheduled a month earlier, Petitioner did not request substitution of counsel until

the day of the sentencing hearing.  Mr. Holloway was not present in court and had not entered an

appearance on behalf of Petitioner.  Mr. Banyon, on the other hand, had represented Petitioner

- 25 -

throughout the proceedings, was present in court and was prepared to proceed with the sentencing. Petitioner did not express any dissatisfaction with Mr. Banyon at any point of the proceedings and did not object to Mr. Banyon's continued representation at the sentencing hearing.  In addition, Mr. Holloway's letter indicated that the length of the delay associated with conducting a psychological evaluation was unknown, but likely to be considerable.  Regardless of whether the trial court erroneously believed that Steven Hartman was a medical doctor, the court was well informed of Petitioner's bipolar disorder and the fact that Petitioner was not taking his medication at the time of the offenses for which he pleaded no contest.  Moreover, Petitioner's belief that an objective risk assessment regarding his propensity for violence would have provided useful information to the court for purposes of sentencing is purely speculative.  In addition, postponing Petitioner's sentence indefinitely would have been antithetical to the court's and victim's interest in bringing the case to a close.  Accordingly, Petitioner's Sixth Amendment rights were not violated by the trial court's denial of his motion for a continuance to retain substitute counsel.

In Ground IV, Petitioner makes a related argument that he is entitled to resentencing before a different judge as the original judge prejudged counsel's proposed presentation of an objective risk assessment as having no value in violation of Petitioner's due process rights.  Because this Court has found no constitutional violation that would warrant resentencing in this case, Petitioner's claim fails to state a basis for habeas corpus relief.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition

be denied.


Date:  December 5, 2014                    /s/ Ellen S. Carmody_____
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge



**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of
service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and
responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections
may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th
Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).